UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

QUANDELL HICKMAN,

                    Plaintiff,

            v.

C.O. ENDEAVERS, 12537; C.O. GRANT, 17624;
C.O. D.W. JOHNSON, 1474; and DR. NOWLIN,

                    Defendants.

No. 24-cv-2082 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

    Plaintiff Quandell Hickman, who is incarcerated and proceeding pro se, brings this action alleging deliberate indifference to medical needs under 42 U.S.C. § 1983 against several correctional officers and a doctor. In his complaint and opposition, Hickman alleges that he suffered injuries to his head and back after "Officer Endeavers" improperly secured him during a bus ride to a court appearance, and that Officers Kelee Grant and Dwayne Johnson subsequently denied his requests for medical treatment for several hours. He also asserts that the individual who eventually attended to him, "Dr. Nowlin," failed to provide him proper care. Defendants Johnson, Grant and Nowlin now move to dismiss for failure to state a claim. For the reasons that follow, the motion is DENIED.

**BACKGROUND**

    The following facts are drawn from the complaint as well as Hickman's opposition. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion."). On March 1, 2024, while he was being detained pretrial, Hickman was transported to Manhattan for a court appearance. *See* Dkt. 1 ("Compl.") at 3–4. During the drive, Officer

Endeavers allegedly handcuffed Hickman's hands to his chest and placed him in a "small cage" on the bus. *Id.* at 4. This position forced Hickman to stand the entire ride, even though he walks with a cane. *Id.* According to Hickman, the bus then drove erratically, stopping without warning "for geese, almost crashing[,] cutting off cars" and "speeding." *Id.* Hickman "slam[med]" his head, back and face into "everything." *Id.* He asked Endeavers for medical attention, who denied the request and called him several expletives. *Id.*

When the bus arrived, Hickman told another officer—Captain Firsov, who has been dismissed from this suit—about the ride and Endeavers' behavior. *Id.* at 4–5. Although Firsov directed Endeavers to write up an injury report, he allegedly never did and accused Hickman of "just want[ing] money." *Id.* at 5; *see also* Dkt. 26 ("Hickman Opp.") at 2. Another officer at MDC later wrote the requested report and gave Hickman a copy so that he could request medical attention when he arrived back at his facility. Hickman Opp. at 2. Once he returned and sought that medical care, he alleges there was some confusion over the injury report, as "the original was missing." *Id.* Two other officers, Grant and Johnson, then "deliberately" put him in a holding cell and refused to let him see a doctor; they allegedly also "threaten[ed]" that he would have to sit there "all day." *Id.* At one point a nurse came by and asked what was "going on" with him, and two or three other medical staff asked about him as well. *Id.*

Some "hours" later, Nowlin attended to Hickman. He purportedly "didn't want to touch [Hickman's] head" due to his "head injury," which had caused a "dent on [his] skull on/under [his] right eyebrow." *Id.* According to Hickman, Nowlin stated that "he didn't have to properly examin[e] him" but that he "was going to be ok[ay]." *Id.* at 2–3. Hickman became upset and asked to see another doctor, but Grant and Johnson refused. He received no further "medical help or pain medication" despite waiting for "hours in pain." *Id.*

2

Beyond the "dent" in his skull, Hickman alleges that he suffered injuries to his forehead, elbow, knee, lower back, wrist and face, and experienced aggravation of old injuries to his hip, knees, face and neck. Compl. at 5. He claims that "shortly after the incident" he was sent to "emergency/medical" in the middle of the night after his housing officer "observed him crying" from the "crippl[ing]" pain he was in. Hickman Opp at 1. According to Hickman, his injuries are lasting and he was still suffering from "intense, severe head[]aches from that head injury" at the time he submitted his opposition in September 2024. *Id.*

Hickman filed this pro se suit on March 18, 2024, alleging that Endeavers, Grant, Johnson, Nowlin and Firsov had violated his federal constitutional rights. *See generally* Compl. Although the Court granted his request to proceed in forma pauperis, it dismissed his claims against Firsov for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii). *See* Dkt. 9. Endeavers filed an answer. Dkt. 21. Grant, Johnson and Nowlin moved to dismiss the suit for failure to state a claim, Dkt. 19, which is now before the Court. Hickman filed a letter in opposition, *see* Hickman Opp., but no reply was filed. According to New York state records, Hickman is no longer in pretrial detention and is presently incarcerated in the state correctional system.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts must therefore accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). At this stage, "the court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch*

*v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). Courts "read the pleadings of a pro se plaintiff liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks omitted). This is especially true when the plaintiff alleges civil rights violations. *See McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).

## DISCUSSION

Pretrial detainees who are deprived of adequate medical care may bring a claim against state officers under the Due Process Clause of the Fourteenth Amendment. *See Charles v. Orange County*, 925 F.3d 73, 86–87 (2d Cir. 2019); *see also Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). To state a claim, a plaintiff must plausibly allege that (1) he was suffering from a "serious medical need" that could "produce death, degeneration, or extreme pain," and (2) the defendant officers "acted with deliberate indifference to such needs." *Charles*, 925 F.3d at 86.

Courts look to several factors to assess whether a medical need was sufficiently serious, including "whether a reasonable doctor or patient would find the injury important and worthy of treatment, whether the medical condition significantly affects an individual's daily activities, . . . whether the illness or injury inflicts chronic and substantial pain" and whether the plaintiff suffered "actual medical consequences . . . from the denial of care." *Id.* In addition, courts often look to case law involving Eighth Amendment claims for deliberate indifference to convicted prisoners, which use the same standard for what constitutes a "serious medical need." *See Darnell*, 849 F.3d at 30.

When assessing deliberate indifference, meanwhile, courts assess whether the defendant "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant[] knew, or should have known, that the condition posed

4

an excessive risk to the plaintiff's health or safety." *Charles*, 925 F.3d at 87 (alterations omitted) (quoting *Darnell*, 849 F.3d at 35). Unlike Eighth Amendment claims, this "recklessness" standard is akin to the lower "objective standard" commonly used in civil contexts, as opposed to the "subjective" one from the criminal law. *Id.*; *see also Darnell*, 849 F.3d at 32, 34–35.

Here, Hickman alleges that Grant and Johnson violated his Fourteenth Amendment rights by refusing to provide him with timely medical care, and that Nowlin did so by failing to provide him with adequate treatment. As a threshold matter, the Court recognizes that Hickman's complaint included minimal allegations against these Defendants. It alleged only in vague terms that Grant and Johnson "made [him] wait for hours" and that Nowlin had somehow "denied [him] proper care." Compl. at 5. It also failed to detail the extent of Hickman's head injuries.

His opposition, however, substantially expanded on these points, providing considerably more detail about his alleged head trauma and the failure of Grant, Johnson and Nowlin to provide him even minimal care for it. Because Hickman is pro se, the Court also considers these additional factual allegations, treating them "as amending the original complaint." *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) ("A district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion." (quoting *Walker*, 717 F.3d at 122 n.1)). Defendants declined to file a reply and thus did not respond in kind to these additional allegations.

Liberally construing the allegations in his favor, the Court agrees that Hickman has stated a plausible claim against each of Grant, Johnson and Nowlin. Stating with Grant and Johnson, Hickman alleges that he suffered a potentially serious head injury—that caused a "dent on [his] skull" under his eyebrow—and requested medical attention. Hickman Opp. at 2. According to Hickman, Grant and Johnson denied that request and "deliberately" held him in a holding cell for

5

hours, which prompted several other medical staff to ask about him. *Id.* They allegedly also threatened that he would have to stay in the cell "all day" because he was never going to get treatment. *Id.* Hickman also says that, soon after the incident, he was sent to emergency care at 3:00 a.m. due to "crippl[ing]" pain, and further alleges that he was still suffering from "intense, severe head[]aches" as of the date of his opposition—more than six months after the incident occurred. *Id.* at 1.

These allegations are sufficient to state a claim for deliberate indifference of medical needs under the Fourteenth Amendment. First, Hickman's allegations of head trauma meet the standard for a "serious medical need." *Charles*, 925 F.3d at 86. He alleges not only that he hit his head during the bus drive, but that the blow left him with a "dent" in his "skull"—an allegation that the Court must accept as true at this stage. Hickman Opp. at 2. This injury was severe enough to cause headaches stretching on for months and prompted a late-night visit to emergency medical care. As other courts have found, allegations of acute "head trauma"—which may indicate a concussion or worse—often amount to a "serious medical condition" for purposes of a Fourteenth Amendment deliberate indifference claim. *See Porter v. Bunch*, No. 16-cv-5935 (KMK), 2019 WL 1428431, at *9 (S.D.N.Y. Mar. 29, 2019); *Sadowski v. Dyer*, No. 18-cv-1074 (KAD), 2019 WL 2085994, at *7 (D. Conn. May 13, 2019) ("Sadowski has plausibly alleged that he suffered from a serious medical condition, severe pain in his head and a possible concussion, upon his admission."); *Hamlett v. Everly*, No. 21-cv-6663 (NSR), 2023 WL 2586230, at *6 (S.D.N.Y. Mar. 21, 2023) ("[A] violent blow to the head may cause a sufficiently serious medical condition when resulting in a concussion and attendant symptoms that last several weeks, such as dizziness, vomiting, and persistent headaches." (alterations and internal quotation marks omitted)). That is especially true here, given that Hickman has alleged his injuries were severe enough to cause a

6

"dent" in his skull and severe headaches that required urgent care and still persist. Hickman Opp. at 2. And while Hickman was eventually granted access to a doctor, that was not until "hours" later, *id.*—which is the sort of "temporary delay" that could imperil someone suffering from a potentially serious injury like head trauma, *see Fuentes v. Balcer*, No. 10-cv-684 (JTC), 2013 WL 276679, at *8 (W.D.N.Y. Jan. 24, 2013) (internal quotation marks omitted).

Second, Hickman has plausibly alleged that Grant and Johnson recklessly failed to act with reasonable care to mitigate the health risk posed to Hickman. He claims that when he requested medical attention for his head injury, the two officers "deliberately held [him] in a holding cell for hours" and "threaten[ed]" him that he would have to "sit[] there all day" because he would not receive medical care. Hickman Opp. at 2. Based on the facts alleged, Grant and Johnson were well aware that Hickman had suffered head trauma—and potentially one that was visible and serious given the alleged "dent"—yet required him to wait "all day" to obtain treatment. *Id.* That sort of indifference rises to the level of "reckless disregard" required for a Fourteenth Amendment claim. *See Sadowski*, 2019 WL 2085994, at *7 (denying motion to dismiss based on allegations that nurse failed to promptly refer plaintiff who suffered head injury to treatment).

Although a closer question, Hickman has also stated a claim against Nowlin. According to Hickman, once Nowlin came to see him he "didn't want to touch [Hickman's] head" to examine the "dent" and simply assured Hickman that he "was ok[ay]." Hickman Opp. at 1–2. Nowlin then "stated he didn't have to properly examin[e] Hickman," and allegedly provided no further care, examination or medication to help with his pain. *Id.* at 2. Taking these allegations as true, they are also sufficient, as Nowlin knew about Hickman's head trauma yet declined to perform a proper examination to assess the extent and severity of the injury. That distinguishes this case from others that were dismissed because the treating doctor was not alleged to have known about the serious

7

medical condition. *See Porter*, 2019 WL 1428431, at *10 ("Plaintiff does not plead any facts . . . that would enable the Court to infer that [the doctor] actually knew of and disregarded a substantial risk to Plaintiff's health."). Nor is this a case where a plaintiff merely "disagrees" with the treatment he received, given the allegation that Nowlin declined to fully examine him despite the possibility of head trauma. *See, e.g.*, *Hamlett*, 2023 WL 2586230, at *6 (citing *Brown v. Selwin*, 250 F. Supp. 2d 299, 308 (S.D.N.Y. 1999)). On these allegations, it is plausible that Nowlin recklessly ignored a risk that Hickman was suffering from a serious medical condition.

## CONCLUSION

For these reasons, the motion to dismiss is DENIED. The Clerk of Court is respectfully directed to terminate the motion pending at docket number 19.

SO ORDERED.

Dated:   March 31, 2025
         New York, New York

Ronnie Abrams
United States District Judge